UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Closed Joint Stock Company "CTC Network," Closed     Index No. 15-CV-8681
Joint Stock Company "TV DARIAL," and Closed Joint
Stock Company "New Channel"

                                    Plaintiffs,
-against-                                                        **COMPLAINT**

ActavaTV, Inc. (http://www.actava.tv)

                                   Defendant.
-----------------------------------------------------------------X

        Plaintiffs Closed Joint Stock Company "CTC Network" ("CTC"), Closed Joint Stock Company "TV DARIAL" ("DARIAL") and Closed Joint Stock Company "New Channel" ("New Channel") (each of the foregoing a "Plaintiff" and collectively "Plaintiffs"),[1] by their attorneys, Dunnington, Bartholow & Miller LLP ("Dunnington"), as and for their complaint against Defendant ActavaTV, Inc. ("Defendant" or "Actava") for trademark and copyright infringement and related claims aver as follows:

## PRELIMINARY STATEMENT

        1.     Plaintiffs are producers and broadcasters of some of the Russian Federation's most famous television channels.

        2.     This action involves Actava's unauthorized copying and distribution of these famous channels and programming (each a "Channel" or "Program" and collectively the "Channels" or "Programming") to consumers in this judicial district and throughout the United States.

        3.     Without authority, Defendant Actava TV, Inc. broadcasts Plaintiffs' valuable foreign-language television channels (each a "Channel" and collectively the "Channels") and

---

[1] A reference to a Plaintiff or Plaintiffs shall be deemed to include its or their parents, subsidiaries, licensees and affiliates.

1

related programs (each a "Program" and collectively the "Programming") over the internet through www.actava.tv (the "Website").[2]

4. As set forth herein, Actava solicits consumers in this judicial district to purchase equipment and download software that permits the streaming of the Channels and Programming for a fee via the Website.

5. Plaintiff asserts claims pursuant to the Lanham (Trademark) Act, Copyright Act, Communications Act and the New York General Business Law, each of which expressly provides for injunctive relief in this circumstance.

6. Injunctive and monetary relief is warranted in this action because Actava has been streaming over internet protocol television ("IPTV"), to paying subscribers located in New York and elsewhere, the Channels and the Programming belonging to Plaintiffs without Plaintiffs' authorization or consent. IPTV is distinct from merely broadcasting content over the internet. In some instances, a specialized receiver or software may be required to view IPTV on a computer, television or other monitor. IPTV is a favored tool of infringers.[3]

7. Plaintiffs' Channels and Programming are protected by the intellectual property laws of the Russian Federation and are therefore entitled to the protection of United States copyright law pursuant to the Berne Convention for the Protection of Literary and Artistic Works, September 9, 1886, as revised at Stockholm on July 14, 1967, 828 U.N.T.S. 222 ("Berne Convention"). The Berne Convention was adopted in the United States by the Berne Convention Implementation Act of 1988, Pub. L. No. 100-568, 102 Stat. 2853 and is enforceable in this Court pursuant to the Copyright Act 17 U.S.C. § 101 *et. seq.*

---

[2] The registrar of the Website is non-party Network Solutions, LLC ("Network Solutions").
[3] *See e.g.* Robert Frieden, *The Impact of Next Generation Television on Consumers and the First Amendment*, 24 Fordham Intell. Prop. Media & Ent. L.J. 61, 85 (2013) ("IPTV techniques . . . promote copyright infringement, largely because relatively few content providers and distributors have authorized access through nontraditional media."

8. The Channels and Programming are also entitled to the protection of United States trademark law pursuant to the Paris Convention for the Protection of Industrial Property (last revised in 1967), which is enforceable pursuant to Section 44 of the Lanham Act ("Paris Convention"). 15 U.S.C. § 1126. *See Convention Done at Stockholm July 14, 1967*, T.I.A.S. No. 6923 (Sept. 5, 1970).

9. Unless restrained by the Court, the loss of control over the distribution of Plaintiffs' Channels and Programming, the preemption of Plaintiffs' opportunities to license content over new media, and the other unlawful conduct contemplated by Defendant Actava threatens Plaintiffs with substantial irremediable losses.

10. Plaintiffs ask that the Court enjoin Defendant's unlawful conduct and award damages arising out of Defendant's unlawful conduct in addition to any and all other relief authorized by statute or at common law.

## THE PARTIES

11. Plaintiff CTC is a closed joint stock company located in and organized under the laws of the Russian Federation. CTC produces the CTC channel. The CTC channel logo is:



The Russian language CTC channel has been broadcasting continuously since 1996 and features Russian and foreign programming, including but not limited to dramas, sitcoms, humor, music and general entertainment shows and advertising. CTC has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world. Actava is not authorized to broadcast the CTC channel in the United States or elsewhere.

12. Plaintiff DARIAL is a closed joint stock company located in and organized under the laws of the Russian Federation. DARIAL produces the Peretz channel. The Peretz channel logo is:



The Peretz channel was originally named Daryal TV and was rebranded as Peretz in 2011. Its Russian language programming includes but is not limited to humor and reality television. Darial has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world. Actava is not authorized to broadcast the Peretz channel in the United States or elsewhere.

13. Plaintiff New Channel is a closed joint stock company located in an organized under the laws of the Russian Federation. New Channel produces the Domashny channel. The Domashny channel logo is:



The Domashny channel began broadcasting in 2005 and is a specialized Russian language thematic channel that targets a female audience. New Channel has entered into exclusive license agreements with third parties to distribute its programs via IPTV in the United States and around the world. Actava is not authorized to broadcast the Domashny channel in the United States or elsewhere.

14. Defendant Actava is a for-profit corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 50 Broadway, Suite

4

1205, New York, New York 10004. Annexed hereto as **Exhibit A** is the Entity Information concerning Actava maintained by the New York Secretary of State.

## JURISDICTION AND VENUE

15. The Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 with respect to Plaintiff's Lanham Act, Communications and Trademark Act claims and may assert supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367. With further respect to Plaintiffs' Copyright Act claims, the Court has jurisdiction pursuant to Art. 5(1) of the Berne Convention. The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

16. Defendant is located in and transacts business in the Southern District of New York over the internet. It operates the interactive Website, actava.tv, which offers goods and services to users located in the Southern District of New York, and across the country, for a fee. Defendant's website offers subscription services to customers in New York and elsewhere and accepts electronic payments via credit card, including Visa, American Express, MasterCard, and Discover, and PayPal. A screenshot of Actava's webpage indicating that it accepts the foregoing payment methods is annexed as **Exhibit B.**

17. Venue is properly laid in this District under 28 U.S.C. §§ 1391 (b) and (c) and 1400 (a).

# PLAINTIFFS HAVE STANDING TO BRING THIS ACTION UNDER THE BERNE AND PARIS CONVENTIONS

## A. Plaintiffs Have Standing Under The Copyright Act Pursuant To The Berne Convention

18. Both the United States and the Russian Federation are signatories to the Berne Convention.[4]

19. Pursuant to the terms of the Berne Convention and the implementing statutes in the signatory countries thereto, each signatory country is obligated to give the same protection under its copyright laws to a work originating in another of the signatory countries as it would to a work originating within that country. Thus, each signatory country of the Berne Convention is obligated to recognize and enforce Plaintiffs' copyrights in the Channels and Programming as they would if the Channels and Programming had originated in that country. The United States Supreme Court has consistently upheld the Berne Convention and indicated the strong public policy behind the United States accession into it. *Golan v. Holder*, 33 ITRD 1769, 132 S. Ct. 873, 878, 181 L. Ed. 2d 835 (2012).[5]

20. The Programming constitutes Berne Convention works as defined in the Copyright Act, Title 17 U.S.C., § 101, as amended, and is subject to the protection of the Copyright Act of 1976, Title 17 U.S.C. §§ 101 et seq. This is because the Berne Convention extends to cinematic works. (Art. 2(1)).

---

[4] The Berne Convention came into force in the United States on March 1, 1989 and in the Russian Federation on March 13, 1995. *See* http://www.wipo.int/treaties/en/ShowResults.jsp?treaty_id=15 (last accessed November 4 2015).

[5] "Members of the Berne Union agree to treat authors from other member countries as well as they treat their own. Berne Convention, Sept. 9, 1886, as revised at Stockholm on July 14, 1967, Art. 1, 5(1), 828 U.N.T.S. 221, 225, 231–233. Nationals of a member country, as well as any author who publishes in one of Berne's 164 member states, thus enjoy copyright protection in nations across the globe. Art. 2(6), 3. Each country, moreover, must afford at least the minimum level of protection specified by Berne. The copyright term must span the author's lifetime, plus at least 50 additional years, whether or not the author has complied with a member state's legal formalities. Art. 5(2), 7(1). And, as relevant here, a work must be protected abroad unless its copyright term has expired in either the country where protection is claimed or the country of origin. Art. 18(1)–(2)."

21. The Programming has been and continues to be produced and broadcast in the Russian Federation, and therefore registration of the Programming with the United States Copyright Office is not required for Plaintiffs to assert claims in this Court. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 153 F.3d 82, 90 (2d Cir. 1998); *Kuklachev v. Gelfman,* 600 F. Supp. 2d 437, 474 (E.D.N.Y. 2009); http://www.copyright.gov/fls/fl100.html (last accessed November 4, 2015).

22. Because the alleged infringement is occurring in the United States, domestic law applies to Plaintiffs' infringement claims. *Dish Network L.L.C. v. TV Net Solutions, LLC,* No. 6:12-CV-1629-ORL-41, 2014 WL 6685351, at *3 (M.D. Fla. Nov. 25, 2014) *citing Itar-Tass*.

23. Relevant case law provides that the Court may issue preliminary and permanent injunctive relief to stop illegal transmission of Berne Convention works over IPTV. *WPIX, Inc. v. ivi, Inc.,* 765 F. Supp. 2d 594 (S.D.N.Y. 2011) *aff'd,* 691 F.3d 275 (2d Cir. 2012) *lv. denied* 133 S. Ct. 1585, 185 L. Ed. 2d 607 (2013).

## B. **Plaintiffs Have Standing Under The Lanham Act Pursuant To The Paris Convention**

24. Both the United States and the Russian Federation are signatories to the Paris Convention.[6]

25. Plaintiffs' Channels are identified by the famous marks reproduced under the "Parties" heading of this Complaint.

26. Section 44 of the Lanham Act gives foreign nationals the same rights and protections provided to United States citizens by the Lanham Act. Accordingly, Plaintiffs may seek protection in this Court for violations of the Lanham Act. *Vanity Fair Mills, Inc. v. T.*

---

[6] The Paris Convention came into force in the United States on May 30, 1887 and in the Russian Federation on July 1, 1965. *See* http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=2 (last accessed November 4, 2015).

7

*Eaton Co.*, 234 F.2d 633, 640 (2d Cir. 1956) *cert. denied* 352 U.S. 871 (1956) *rehearing denied* 352 U.S. 913 (1956).

## FACTS EVIDENCING DEFENDANT'S UNLAWFUL CONDUCT

27. Plaintiffs are actively engaged in the production and distribution of the Programming and other copyrighted works primarily in the Russian language on their Channels. Plaintiffs have entered into certain license agreements providing non-parties with the exclusive right to broadcast and re-broadcast their programs and other copyrighted materials in the United States. Only the relevant license holders are authorized to broadcast, re-broadcast or otherwise transmit Plaintiff's copyrighted programming and other copyrighted materials in the United States via IPTV or otherwise.

28. Upon information and belief, in or about 2010, Actava began operating its for-profit commercial service that provides subscribers with online-access telecasts of numerous television channels, including Plaintiffs' Channels, via the Website.

29. Upon information and belief, Actava captures the signals of the Plaintiffs' channels and transmits those signals to its servers, and then streams the signals over IPTV to customers. Annexed hereto as **Exhibit C** is a screen shot of the Website displaying the CTC channel. Annexed hereto as **Exhibit D** is a screen shot of the Website displaying the Domashny channel. Annexed hereto as **Exhibit E** is a screen shot of the Website displaying the Peretz channel.

30. Upon information and belief, to take advantage of Actava's service, including accessing the Channels and Programming, an individual with internet access need only (a) access the actava.tv website, (b) download software (e.g. the VLC Media Player) and/or receive equipment necessary for viewing the pirated content, (c) subscribe to Actava's service, (d) agree

to the terms and conditions listed on the Website, and (e) pay the necessary charges and other fees to Actava. *See* Exhibit B.

31. Upon information and belief, Actava has not obtained authorization from any Plaintiff to stream the Channels or Programming over IPTV or to broadcast or re-broadcast the Channels or Programming through any other method. Accordingly, in light of Actava's conduct, consumers will likely be confused in to believing that the Website is authorized to display the Channels and the Programming.

## CAUSES OF ACTION

## COUNT ONE

## TRADEMARK INFRINGEMENT UNDER § 43 OF THE LANHAM ACT

32. Plaintiffs hereby re-allege each and every allegation of paragraphs 1 through 31 above as if fully set forth herein.

33. Plaintiffs' marks are protected pursuant to the laws of the Russian Federation and therefore entitled to protection under the Lanham Act by virtue of the Paris Convention.

34. Defendant's use of the Channels' trademarks, including but not limited to the logos, to promote, market or sell products and services on the Actava.tv website constitutes trademark infringement pursuant to Section 43 of the Lanham Act, 15 U.S.C. § 1125.

35. Defendant's infringement of the Channels' trademarks is intentional and willful and has caused and will continue to cause irreparable damage to Plaintiffs for which there is no adequate remedy at law.

36. Accordingly, the Court should grant injunctive relief barring Actava from broadcasting Plaintiffs' Channels and Programming or otherwise infringing upon Plaintiffs' marks as well as an award of damages along with any other relief that the Court deems just, proper and equitable.

...

## COUNT TWO

## **FALSE ADVERTISING UNDER § 43 OF THE LANHAM ACT**

37. Plaintiffs hereby re-allege each and every allegation of paragraphs 1 through 36 above as if fully set forth herein.

38. Defendant's advertisements and statements concerning their authority to broadcast Plaintiffs' programming are literally and/or impliedly false and misleading and in direct violation of Section 43(a) of the Lanham Act, which provides in relevant part that "[a]ny person who, in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any person who believes that he or she is likely to be damaged by such act."

39. As set forth in Exhibits C-E, Actava has misappropriated the logos of Plaintiffs' Channels for its own commercial gain and to the detriment of Plaintiffs.

40. Pursuant to 15 U.S.C. § 1125, 1117, Plaintiffs are entitled to injunctive relief, damages for Defendant's Lanham Act violations, an accounting of profits made by Actava on revenues relating to Plaintiffs' Programming, and recovery of costs and reasonable attorney's fees incurred in this action along with any other relief that the Court deems just, proper and equitable.

## COUNT THREE

## **TRADEMARK TARNISHMENT**

41. Plaintiffs hereby re-allege each and every allegation of paragraphs 1 through 40 above as if fully set forth herein.

42. Numerous consumer complaints have been made concerning Actava, and said consumers are and will likely continue to be confused into believing that the Website is authorized to display Plaintiffs' Channels and Programming.

43. Defendant also makes sexually explicit and other objectionable content readily available on the same Website it uses to broadcast the Channels.

44. By displaying Plaintiffs' logos and related content in the same lineup as adult-only programming and broadcasting them on the same Website, Defendant creates an association between Plaintiffs' trademarks and this explicit content.

45. Plaintiffs' Channels are intended for and marketed to a general audience, and the logos are used to designate such generally appropriate content. Association of Plaintiffs' marks with pornography would irreversibly and completely decimate the carefully maintained reputation of the Channels and the trademarks signifying them, utterly devaluing the trademarks and in the process irreparably harming Plaintiffs and their goodwill.

46. Pursuant to 15 U.S.C. § 1125, 1116, Plaintiffs are entitled to injunctive relief along with any other relief that the Court deems just, proper and equitable.

## COUNT FOUR

### COPYRIGHT INFRINGEMENT

47. Plaintiffs hereby incorporate and re-allege each and every allegation of paragraphs 1 through 46 above.

48. The Berne Convention requires its signatories to recognize the copyrights issued with respect to works created in other member countries.

49. Art. 2 of the Berne Convention provides that the Berne Convention applies to cinematic works.

50. The Programming in issue need not be registered with the United States Copyright Office in order to be eligible for protection under the Copyright Act as applicable here through the Berne Convention.

51. Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates) are the legal or beneficial owners of the copyrights in the Channels and Programming that have been or will be exhibited over broadcast or internet television stations in the United States or abroad as well as through a variety of other media outlets.

52. Each Program is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

53. Each Program has been created or licensed for exhibition by Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates), the transmissions of which Actava is streaming without authorization as part of the actava.tv service via the Website. Upon information and belief, Defendant has streamed or will stream, as part of actava.tv's unauthorized service via the Website, Plaintiffs' Channels and Programming.

54. Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Plaintiffs own the exclusive rights, among others, to reproduce in copies their copyrighted works, to distribute copies to the public of their copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works, and to make derivative works based upon their copyrighted works.

55. Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates) also own the exclusive right to authorize others to exercise the rights set forth in the preceding paragraph 54.

56. Neither any of Plaintiffs nor any other person or entity authorized by Plaintiffs has granted any license, permission or authorization to Actava to exercise any of the rights as set forth in this Complaint or to authorize others to exercise such rights with respect to the copyrighted Programs or any other works in which Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

57. In offering the actava.tv service, Actava has exercised and will exercise (or has authorized or will authorize others to exercise) one or more of Plaintiffs' exclusive rights set forth in this Complaint with respect to the Programming and other works in which Plaintiffs (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

58. Actava has committed and will commit each act of copyright infringement with the knowledge that it was not authorized to exercise any of the rights (or to authorize others to exercise any of the rights) set forth in this Complaint with respect to Plaintiffs' Programming and other works in which Plaintiffs own copyrights. Defendant's conduct thus has constituted and will constitute willful copyright infringement.

59. As a result of Actava's willful copyright infringement, Plaintiffs have been and are being irreparably harmed.

60. The Copyright Act provides for, among other things, injunctive and monetary relief to remedy such instances of infringement. 17 U.S.C. §§ 502, 504.

61. Unless restrained by the Court, Defendant will continue to engage in such willful copyright infringement.

62. Accordingly, the Court should grant injunctive relief barring Actava from broadcasting Plaintiffs' Channels and Programming as well as an award of damages along with any other relief that the Court deems just, proper and equitable.

## COUNT FIVE

## **SECONDARY COPYRIGHT INFRINGEMENT**

63. Plaintiffs hereby re-allege each and every allegation of paragraphs 1 through 62 above as if fully set forth herein.

64. Through the creation, maintenance and operation of its unauthorized Website, actava.tv, Actava induces, contributes to, and is vicariously liable for any copyright infringement committed by its subscribers or other persons that are provided access to the actava.tv service.

65. Accordingly, the Court should grant injunctive relief as requested above along with any such other relief the Court deems just, proper and equitable.

## COUNT SIX

## **UNAUTHORIZED PUBLICATION OR COMMUNICATION UNDER THE COMMUNICATIONS ACT**

66. Plaintiffs hereby re-allege each and every allegation of paragraphs 1 through 65 above as if fully set forth herein.

67. Plaintiffs own the rights to, among other things, broadcast, re-broadcast, market and distribute within the United States and elsewhere their programs which are currently transmitted over the Website by Actava.

68. Plaintiffs license the rights to broadcast and re-broadcast their programs to certain third parties in exchange for a fee.

69. Actava has not received a license from any Plaintiff to broadcast or re-broadcast its programs, nor has it received any other permission, express or otherwise, to do so. Through its Website, actava.tv, Actava has and continues to intentionally pirate, retransmit and publish Plaintiffs' programs for the sole purpose of its own economic gain and to the detriment of Plaintiffs and their licensees.

70. The foregoing willful and intentional actions of Defendant Actava constitute the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. § 605(a), which is applicable to satellite and other cable communication pursuant to subparagraphs (b) – (e) of that section.

71. Without the express permission of any Plaintiff or Plaintiffs collectively, Actava is receiving, transmitting or assisting in transmitting interstate foreign broadcast communications by wire or radio, causing said communications, their contents and substance to be divulged and published through unauthorized channels of transmission or reception.

72. The foregoing willful and intentional actions by Actava constitute the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. 605(a).

73. "Any person aggrieved by a violation of subsection (a) may bring a civil action for actual or statutory damages for each violation." 47 U.S.C. § 605(e)(3)(C). "Any person aggrieved" includes "any person with proprietary rights in the intercepted communication." 47 U.S.C. § 605(b)(6).

74. As a direct and proximate result of Actava's wrongful actions, Plaintiffs have sustained and will continue to sustain damages and irreparable harm such that monetary, preliminary and permanent injunctive relief is warranted as authorized by 47 U.S.C. 605(e) along with an award of any such other relief the Court deems just, proper and equitable.

## COUNT SEVEN

### NEW YORK GEN. BUS. LAW § 349

75. Plaintiffs hereby re-allege each and every allegation of paragraphs 1 through 74 above as if fully set forth herein.

76. New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . ."

77. Subsection (h) of General Business Law § 349 provides that "any person who has been injured by reason of any violation of this section may bring an action . . . to enjoin such unlawful act or practice . . ." in addition to the right to recover "actual damages."

78. Actava has, through its Website, actava.tv, deceived paying customers in New York into believing it has the legal right or authority to broadcast or re-broadcast Programs over which Plaintiffs have exclusive rights. The actava.tv website is misleading in a material way because the interactive website represents that the service to be provided is legal when it is in fact infringing. Plaintiffs have suffered and continue to suffer irreparable injury through Actava's conduct, including its broadcast and re-broadcast of Plaintiffs' Programming. Such injuries are not limited to financial injury and include damage to Plaintiffs' worldwide reputations, goodwill and relationships with licensees, among others.

79. Accordingly, Plaintiffs are entitled to injunctive relief against Actava as well as all actual damages caused by Actava's conduct under Gen. Bus. Law § 349 any such other relief the Court deems just, proper and equitable.

## COUNT EIGHT

## UNFAIR COMPETITION (ACCOUNTING)

80. Plaintiffs hereby re-allege each and every allegation of paragraphs 1 through 79 above as if fully set forth herein.

81. The conduct of Defendant Actava constitutes unlawful, unfair, and fraudulent business practices in violation of the general business, trade regulation, and unfair competition laws of the State of New York.

82. Plaintiffs are therefore entitled to injunctive relief against the injury Actava has caused to Plaintiffs by misappropriation of the programming belonging to the Plaintiffs.

83. Actava's wrongful acts have proximately caused and will continue to so cause Plaintiffs substantial injury, including loss of customers and advertising, confusion of existing and potential customers, injury to their reputations, and diminution of the value of the Programming and of all the works which Plaintiffs create and market. The direct damages, lost profits, and other losses sustained by Plaintiffs due to Actava's unlawful conduct are substantial.

84. Plaintiffs are therefore entitled to a full and accurate accounting of all the profits the Defendant has obtained as a result of its unfair competition practices with respect to Plaintiffs' Programming.

85. Plaintiffs are also entitled to an injunction, under principles of equity, restraining Defendant Actava and its officers, agents, servants, employees, and all persons acting in active concert or privity with them from engaging in any further such unlawful conduct along with any such other relief the Court deems just, proper and equitable.

## COUNT NINE

### DECLARATORY JUDGMENT

86. Plaintiffs hereby re-allege each and every allegation of paragraphs 1 through 85 above as if fully set forth herein.

87. A case of actual controversy exists regarding Actava's broadcasts of Plaintiff's Channels and Programming.

88. Therefore, a judgment declaring Plaintiffs' exclusive rights to the Programming and Channels is warranted pursuant to the declaratory Judgment Act 28 U.S.C. § 2201, *et. seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendant Actava as follows:

A.     A preliminary and permanent injunction enjoining and restraining Actava and its officers, agents, servants, and employees and all those in active concert or participation with them, including but not limited to payment processors, from infringing upon Plaintiffs' exclusive rights to the Channels and Programming;

B.     A declaration providing that Plaintiffs own all rights, titles and interests to the Channels and Programming and that Actava has no rights, title or interest to the Channels and Programming ;

C.     An award to Plaintiffs of monetary damages, costs and fees;

D.     An award to Plaintiffs of exemplary damages;

E.     An award of any such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
November 4, 2015

                                                            DUNNINGTON, BARTHOLOW & MILLER LLP
                                                            *Attorneys for Plaintiffs*

By: _____
Raymond J. Dowd
Samuel A. Blaustein
250 Park Avenue, Suite 1103
New York, New York 10177
(212) 682-8811
rdowd@dunnington.com
sblaustein@dunnington.com