# GOTTLIEB, RACKMAN & REISMAN, P.C.

COUNSELORS AT LAW

PATENTS · TRADEMARKS · COPYRIGHTS · INTELLECTUAL PROPERTY

270 MADISON AVENUE
NEW YORK, N. Y. 10016-0601
PHONE: (212) 684-3900 · FACSIMILE: (212) 684-3999
WEB: http://www.grr.com · E-MAIL: info@grr.com

ALLEN I. RUBENSTEIN
JEFFREY M. KADEN
MARIA A. SAVIO
MARC P. MISTHAL
BARRY R. LEWIN
MITCHELL S. FELLER

COUNSEL
DIANA MULLER*

*MEMBER OF THE BAR
OF ARGENTINA ONLY

DONNA L. MIRMAN
JONATHAN M. PUROW
JASON R. WACHTER
JONATHAN A. MALKI
MICHAEL NESHEIWAT
DAVID D. RODRIGUES

PATENT AGENT
ZOYA V. CHERNINA

OF COUNSEL
GEORGE GOTTLIEB
JAMES REISMAN
DAVID S. KASHMAN
TIBERIU WEISZ
SILVIA SALVADORI

March 23, 2016

**Via ECF**

The Honorable Barbara Moses
United States Magistrate Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
New York, New York 10007

Re:   *Closed Joint Stock Co. "CTC Network", et al. v. ActavaTV, Inc.*,
      **15 Civ. 8681 (GBD) (BCM)**

**Reply to Plaintiffs' Letter of March 21, 2016**

Dear Judge Moses:

As set out in Actava's letter of March 18, 2016 (Dkt. 48), "[p]rotective orders that limit access to certain documents to counsel and experts are commonly entered in litigation involving … commercial information." *Vesta Corset Co. v. Carmen Founds., Inc.*, 1999 U.S. Dist. LEXIS 124, at *7 (S.D.N.Y. Jan. 13, 1999). To that end, the entry here of a protective order controlling the parties' rights and duties in regard to confidential materials is both proper and uncontroversial.

In adamantly opposing Actava's request, however, Plaintiffs' letter of March 21, 2016 (Dkt. No. 49) ("Plaintiffs' Resp.") misapprehends the effect of Actava's Proposed Order, misunderstands (or flatly ignores) the nature of the information to be disclosed, and, most tellingly, in promising to disclose information to third parties, *articulates good cause to enter the Proposed Order*.

Actava notes at the outset that Plaintiffs misrepresent the Proposed Order as a "blanket confidentiality order," none-too-subtly implying that entry of the order would result in the classification of *everything* produced in discovery as confidential. Irrespective of their characterization, however, the Proposed Order merely permits the parties to designate those materials that include "confidential and/or proprietary commercial information that is not generally available to the public [for which] a reasonable basis exists for limiting dissemination of the material under the standards of Fed. R. Civ. P. 26." (*See* Exhibit A to Actava's March 18 letter, at ¶ 2.)  Moreover, Actava has no intent to designate all materials disclosed in discovery as confidential; indeed, Actava has already produced documents that do not meet the threshold for designation. Rather, at this point, given ths scope of discovery Plaintiffs are permitted to seek,

Hon. Barbara C. Moses
United States Magistrate Judge
March 23, 2016
Page 2

Actava intends to designate as confidential its tax returns and those materials (and deposition testimony) that convey non-public financial information.

As per Plaintiffs' Response, *McDonnel v. First Unum Life Ins. Co.*, 2012 U.S. Dist. LEXIS 434 (S.D.N.Y. Jan. 3, 2012) recites the familiar standard that the entry of a protective order requires "good cause." *Id.*, at *9-10 (duly entering a protective order restricting disclsoure of "information which is commercially sensitive"). As further pointed out in *McDonnel*, "the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectable interests of the party from whom discovery is sought." *Id.*, at *3-4 (citing *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985)).

Actava seeks to protect its "[i]nternal documents … that contain non-public … financial information [constituting] 'confidential commercial information' under [the Federal Rules]." *New York v. Actavis, PLC*, 2014 U.S. Dist. LEXIS 149327, at *7 (S.D.N.Y. Oct. 21, 2014). These include not only Actava's tax returns[1], but internal accounting statements, which divulge profits and costs, including overhead, cost of goods sold, and marketing expenses.

Courts in this District have consistently found that such materials should be protected from unfettered disclosure, due in part to the risk that a disclosing party's competitors could exploit access to otherwise confidential business information. *See, e.g, id.,* at * 7-8 ("Cost data is sensitive and potentially damaging if shared with competitors … because if it was known to competitors they would be in a position to underbid [the disclosing party].") (internal citations omitted); *see also Vesta Corset Co.*, 1999 U.S. Dist. LEXIS 124, at *2 ("Pricing and marketing information are widely held to be 'confidential businsess information' that may be subject to a protective order."). Moreover, "[m]arketing and promotional expenses are sensitive and can be damaging if shared with competitors and customers…." *See id*.

The same concerns abound here. By their own admission, "Plaintiffs may choose to share information with other victims of infringement to calculate fair settlements and offsets…." (Plaintiffs' Resp. at 2.) Plaintiffs do not identify such third parties, but, to the extent they exist, they could potentially include broadcasters with whom Actava may wish to negotiate content licenses. Disclosure of Actava's internal accounting information to any such party would necessarily hamper its ability to negotiate effectively. Moreover, it stands to reason that one or more third party broadcasters may own, operate, or maintain an affiliation with Internet television service providers; nothing would prevent them from sharing Actava's cost data and pricing information with direct competitors, who in turn could exploit such information to undercut Actava.

More fundamentally, Plaintiffs not only allege without basis that there exist "other victims of infringement," but further assume without authority that such third parties possess valid claims against Actava. It *should* go without saying that there is no universal right of

---

[1] Plaintiffs' Response makes no mention of Actava's tax returns, effectively acknowledging the obvious propriety of Actava's position that they only be produced on a confidential basis.

discovery permitting non-parties to a lawsuit to demand and compel access to otherwise confidential information. This same principle applies to any plaintiffs in related case no. 16 Civ. 1318 that are not present in the instant action ("Additional Plaintiffs"). Indeed, per Your Honor's orders, discovery here is directed to the damages inquest, as mandated by the Default Judgment entered by Judge Daniels (Dkt. No. 20). Of course, no such order has been entered in the related case, and no discovery has or could have been propounded.

In sum, neither the Additional Plaintiffs nor any other third party possesses the right or the mechanism to compel discovery from Actava. As such, entering the Proposed Order would give effect to the principle that Plaintiffs (and any third parties with whom they are in league) may not circumvent the protections and procedures of the Federal Rules just because it suits their purposes.

Plaintiffs' remaining justifications underpinning their objection to the entry of a protective order are similarly unavailing. Plaintiffs claim that their review of Actava's disclosures may require enlisting the aid of third parties, including "translators, technicians, [and] attorneys." (Plaintiffs' Resp. at 2.) However, as Plaintiffs are well aware, the draft order explicitly permits disclosure to certain third parties, including counsel, expert and fact witnesses, and administrative service providers, *including translators—*a category of authorized recipients added by Actava to ameliorate Plaintiffs' concerns.

Plaintiffs further assert that "inadvertent disclosure" beyond that permitted under the Proposed Order may occur in light of the fact that "Plaintiffs are foreign companies with many key employees and consultants for whom English is not a first language." *Id.* Be that as it may, as Your Honor noted during the parties' recent conference, "I understand that there are translation issues … **but [Plaintiffs] chose the forum**...." (*See* Exhibit A). As such, Plaintiffs are not excused from whatever challenges they may encounter as a result of their decision to press their claims in this Court.

Plaintiffs also take the position that the Proposed Order should not be entered because "they are extraordinarily difficult to modify."[2] (Plaintiffs' Resp. at 2.) In the first instance, it is not clear to Actava why a theoretical interest in adjusting the Proposed Order in the future should impede its entry now. In any event, the Proposed Order expressly permits the parties to challenge the status of designated documents and testimony, which should address any potential concerns. (*Id*. at ¶ 9.)

Finally, Plaintiffs propose *ad hoc* redaction as a means of ensuring confidentiality. As Plaintiffs are aware, however, the documents that Actava intends to produce subject to the Proposed Order are comprised almost entirely of tax returns and internal accounting statements;

---

[2] Plaintiffs cite *AT&T Corp. v. Spring Corp.*, 407 F.3d 560 (2d Cir. 2005), in which the Second Circuit affirmed the District Court's denial of a third party intervenor's attempt to modify a protective order. In its opinion the Second Circuit touted the policy benefits of protective orders, holding that "[i]t is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *Id.* at 562.

Hon. Barbara C. Moses
United States Magistrate Judge
March 23, 2016
Page 4

to preserve the confidentiality of its information Actava would be forced to redact such documents in their entirety, an absurd result that would deny Plaintiffs information to which they are admittedly entitled.

In brief, there is ample cause to protect Actava's non-public financial information, as confirmed by Plaintiffs' stated intent to disseminate such information to non-parties without regard to standing or consequence. Moreover, the Proposed Order is limited in its effect, permitting disclosure to all Plaintiffs and necessary third parties. Finally, the Proposed Order is far and away the most efficient mechanism for preserving the integrity of the parties' information and for avoiding further satellite disputes. Therefore, Actava respectfully reasserts its request that the Court enter the Proposed Order.

Plaintiffs' Request for Leave to File a Motion to Compel

Plaintiffs have requested leave to file a motion to compel the disclosure of Actava's financial data as well as information concerning the "method and source of Actava's infringements…." (Plaintiffs' Resp. at 3.) With regard to its financial data, the disposition of the instant motion will resolve any dispute, as Actava is prepared to produce such information subject to Your Honor's decision, thus mooting any motion to compel.

As to the requested "source information", it is Actava's position that Plaintiffs are not entitled to such disclosure in the context of discovery directed to the damages inquest. The information sought does not go to Plaintiffs' damages, if any, but rather speaks to the merits of the case; as such, it is not germane to the inquest, and, in any event, has not been ordered. (*See* Exhibit B.) Moreover, Plaintiffs' discovery requests do not actually request the information in question. Accordingly, Actava is not required to disclose such information.[3]

For the following reasons, therefore, Actava opposes Plaintiffs' request for leave to file a motion to compel.

                Respectfully submitted,
                GOTTLIEB RACKMAN AND REISMAN, P.C.

                /s/ Marc P. Misthal
                Marc P. Misthal
                Jonathan A. Malki

                *Attorneys for Defendant ActavaTV, Inc.*

cc:    All counsel of record (via ECF)

---

[3] As Your Honor is aware, Actava has on several occasions offered to provide such "source information" in the context of settlement negotiations, provided that Plaintiffs agree not to disclose to third parties that Actava revealed the information in question. To date, Plaintiffs have refused to accept the information on such basis.

# **<u>EXHIBIT A</u>**

1            MR. MISTHAL:  Your Honor, we're certainly entitled
2    to.
3            THE COURT:  Okay.  This sounds like a business
4    negotiation and not one that the Court is likely going to be
5    able to resolve or issue a ruling on.  However, business
6    negotiations go on all the time under the guise -- not under
7    the guise, that sounds pejorative and I don't mean to sound
8    pejorative but business negotiations go on all the time as
9    part and parcel of settlement conferences, in some cases aided
10   by the confidentiality rules which apply to settlement
11   conferences.
12           So, given what I've heard and given the District
13   Judge's preference that this matter be settled if possible,
14   which of course is my default preference as well, I am
15   inclined to schedule a settlement conference.
16           Now, I understand that there is some scheduling
17   difficulty have to do with the ability of a plaintiff client
18   representative to attend.  I want to just emphasize to
19   plaintiff's counsel that that's really not optional.  I
20   understand that your client is in Russia.  Your clients I
21   should say.  ==I understand that there are translation issues as==
22   ==well as logistical issues but you chose the forum==, and the
23   rules of this Court and my individual rules are quite clear
24   concerning the importance of a client representative actually
25   being part of that process.  There are lots of good reasons

# **EXHIBIT B**

26

1   parties to be ready to address the possibility of a settlement
2   conference.
3           THE COURT:  Thank you.  I forgot that.  I thank you
4   for reminding me.  Judge -- you can sit down.
5           MR. MISTHAL:  Thank you.
6           THE COURT:  Judge Daniels specifically included in
7   the reference a settlement reference, and I know that you have
8   been speaking to Mr. Leslie, my law clerk to try and find a
9   time when it would make sense.  I also know that there may be
10  some disagreement among counsel as to whether the time is
11  right to have that conference or whether some sort of
12  additional discovery needs to take place, and the problem
13  there is that we are only going about damages discovery at
14  this point.
15          We are not doing merits discovery because you
16  already have a judgment.  So this is not the time, Mr. Dowd,
17  or the place in the case when you are entitled to do discovery
18  and to what I think you really want to know which is how did
19  they do it and how much of it did they do.  Maybe the how much
20  of it did they do part but not the how did they do it part.
21          MR. DOWD:  I just -- I don't understand how we
22  arrive at that limitation.  I just --
23          THE COURT:  Well, I guess because you got ahead of
24  yourself.  You asked for that default and you got it so those
25  matters are no longer in controversy until and unless I vacate

1   that default.
2              MR. DOWD:  How do you -- you know, again I go back
3   to the swimming pool thing.  Someone blows a hole in your pool
4   and you know, we don't know how it was done, the willfulness
5   of it, how do you establish scienter, how do you not
6   establish, you know, what it does to enhance damages, how much
7   flowed out of that hole, whether the stuff that was put up on
8   Actava's website was twenty percent of the infringing stuff
9   that flowed out of that hole, was it eighty percent.  Did he
10  use that hole to sell other infringements to other infringers.
11  That's all fair game in this post-judgment post-liability
12  world in our humble estimation.
13             THE COURT:  Well, your estimation may differ from
14  your adversary's estimation and that matter has not yet been
15  teed up to me in the context of a motion either to compel or
16  for a protective order with regard to the inquest-related
17  discovery which has been authorized.
18             So I can't decide that right this second.  I'm just
19  teeing it up as a potential impediment to settlement.
20             MR. DOWD:  Yes, Your Honor.  And just in our view of
21  it, it's sort of simple math.  We look at how many
22  subscribers, how many channels, relative use.  We take our
23  gross numbers.  We look at the statute of limitations --
24             THE COURT:  Do you know how many subscribers, do you
25  know how many channels?